[No. 19819.  Department One.  October 25, 1926.]

## F. R. ROTTER, *Appellant,* v. A. W. WENDORF *et al., Respondents.*[1]

[1] WITNESSES (44)—COMPETENCY—COMMUNICATIONS BETWEEN WITNESS AND PERSON SUBSEQUENTLY DECEASED. In an action upon an oral contract with defendants, evidence of an alleged conversation with one of the defendants who had died before the trial is inadmissible under Rem. Comp. Stat., § 1211.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered September 12, 1925, upon findings in favor of the defendants, in an action on contract, tried to the court. Affirmed.

*Lund & Dodds,* for appellant.

*E. H. Belden,* for respondent.

BRIDGES, J.—By this action, the plaintiff sought to recover of the defendants a certain sum for services in hauling lumber. The case was tried by the court without a jury. Findings were made in favor of the defendants, and the plaintiff has appealed from a judgment in accordance with the findings.

In 1923, one La Sota was manufacturing lumber at his mill near Deep Creek, in Stevens county. The lumber had to be hauled thence to Northport, the nearest railroad station. This haul was some ten or twelve miles. The respondents had a contract with La Sota whereby they purchased the lumber and became the owners thereof as it was manufactured. The contract provided that it should be piled in the mill yard and marked as the respondents' property, and, after it was properly air-dried, La Sota was to haul it to the railroad at Northport, there loading it on cars.

[1]Reported in 250 Pac. 26.

A part of the purchase price was to be paid as the lumber was piled in the mill yard and the balance after it had been put on the cars.

In May, 1923, La Sota employed Rotter, the appellant, to do the hauling of the lumber and placing it on cars at Northport, for which services he was to receive a designated amount. This contract was verbal. Certain of the lumber was hauled under it. Later in the year, La Sota got into financial trouble and his mill was closed down, and it became evident that he would be unable to carry out his contract with the respondents to haul the lumber that had been already manufactured to the railroad station. The result of this condition was that the respondents made an oral contract with the appellant to haul this lumber and put it on the cars. They were to pay appellant for this service at the rate of three dollars per thousand. The foregoing facts are, for the most part, admitted. Practically the only contested question is, when was the contract between the appellant and respondent made, or was to take effect, and how much lumber was handled under it.

The appellant contends that respondents were to pay him for all lumber hauled after July 1, 1923, and the respondents contend that they were to pay for only such lumber as was hauled after August 1st. It is admitted that after July 1st, appellant hauled 1,922,194 feet of lumber, and after August 1st 906,147 feet.

Appellant's testimony tends to show that he had two conversations with the respondents about this matter, one about the middle of July wherein he says the respondents agreed to see that he was paid for lumber hauled after July 1st, and one about the first of August to practically the same effect. On the other hand, the testimony of the respondents is to the effect

that the first and only arrangement made with the appellant by them was about the first of August, and that at that time it was agreed that, from that date on, the appellant would haul for the respondents, who would pay him at the rate of three dollars a thousand.

The trial court found that the contract was made about August 1st; that, under its terms, the respondents agreed to pay the appellant for such lumber as he hauled thereafter, and that such was the only contract that was made between them. It also found that there was no way of definitely determining the amount of lumber hauled by the appellant under his contract with the respondents, until it was actually checked out at Northport or had been received by respondents at Spokane; that respondents from time to time made payments on account in the sum of three thousand two hundred dollars; and that, upon a final check-up of the amount of lumber hauled after August 1st, it was found that the appellant had been overpaid in the sum of four hundred thirty-eight dollars and six cents. Judgment was taken denying appellant any relief and giving the respondents a judgment against him in the last named sum.

After carefully reading the evidence, we are of the opinion that it clearly supports the findings of the trial court. No good purpose could be accomplished by here setting out the details of the testimony of the respective parties. Suffice it to say that we agree with the trial court that the contract between the appellant and the respondents was that the former should be in the employment of and paid by the latter after August 1st for all lumber hauled after that date. The amount hauled and the price to be paid being substantially agreed upon, it follows that the judgment of the trial court was correct.

The conclusion to which we have come makes it

unnecessary to discuss the question as to whether the court erred in not permitting the appellant to amend his complaint.

The court refused to permit appellant to testify concerning an alleged conversation held by him with Mr. Wendorf, who had died before the trial. We think the ruling was correct, under Rem. Comp. Stat., § 1211 [P. C. § 7722]. We are also of the opinion that nothing was done which had the effect of waiving the protection of the statute.

We are of the belief that the judgment is in accordance with the weight of the testimony, and it is therefore affirmed.

TOLMAN, C. J., FULLERTON, HOLCOMB, and MITCHELL, JJ., concur.